UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
                                                                                          :

J & J SPORTS PRODUCTIONS, INC.,                       :

                           Plaintiff,                                        :          17-cv-4180 (ARR) (ST)

      -against-                                                     :          <u>NOT FOR ELECTRONIC</u>
                                                                          :          <u>OR PRINT PUBLICATION</u>

J & O LLC d/b/a LA GLORIA                          :          <u>ORDER</u>
a/k/a LA GLORIA LOUNGE,                        :
JOHANNA BATISTA and ONIEL PIMENTEL,    :

                           Defendants.                                :
                                                                           X
-------------------------------------------------------------------

ROSS, United States District Judge:

      The court has received the report and recommendation, dated July 25, 2018, from the Honorable Steven L. Tiscione, United States Magistrate Judge. R. & R., ECF No. 22. Plaintiff J & J Sports Productions, Inc. ("plaintiff") timely objected to a portion of the report and recommendation on July 26, 2018. Pl.'s Objs. to R. & R., ECF No. 24 ("Pl.'s Objs."). Specifically, plaintiff objects to Judge Tiscione's denial of its motion for default judgment against individual defendants Johanna Batista ("Batista") and Oniel Pimentel ("Pimentel"), and to the amount of damages assessed against corporate defendant J & O LLC d/b/a La Gloria a/k/a La Gloria Lounge ("J & O LLC"). Pl.'s Objs. 1. In the alternative, plaintiff asks that it be granted leave to amend its complaint if this court agrees with Judge Tiscione that the complaint fails to allege sufficient facts to hold either Batista or Pimentel individually liable. *Id.* at 2. After *de novo* review, I agree with Judge Tiscione that neither Batista nor Pimentel can be held individually liable based upon the facts alleged in the complaint. Furthermore, I find that Judge Tiscione correctly calculated the statutory damages owed under 47 U.S.C. § 605(e)(3)(C)(i) and was right to decline to assess

enhanced damages on J & O LLC in these circumstances. I deny plaintiff's request for leave to amend the complaint. Finally, after reviewing those portions of the R. & R. to which no party objected, I find no clear error. The R. & R. is thus adopted in its entirety.

## BACKGROUND

On September 5, 2014, plaintiff, a California corporation, entered into a closed-circuit television license agreement to obtain the exclusive rights to exhibit the November 22, 2014 Welterweight Championship Bout between Manny Pacquiano and Chris Algieri (the "Event"). Compl. ¶ 7, ECF No. 1 ("Compl."); Compl. Ex. A. Pursuant to this agreement, plaintiff contracted with a variety of New York-based establishments, including theaters, arenas, bars, and clubs, to "grant the right to broadcast the Event in exchange for a fee." Compl. ¶ 11. Establishments that entered into a contract with plaintiff received special equipment so that they could display the Event to their patrons; without the "electronic decoding equipment and satellite coordinates necessary to receive the signal of the Event," Compl. ¶¶ 13–14, these businesses would not have been able to broadcast the Event absent affirmative and illegal action. *See* Aff. of Joseph M. Gagliardi ¶ 9, ECF No. 20–3 ("Gagliardi Aff.") ("[O]ur programming is *not* and cannot be mistakenly, innocently or accidentally intercepted.").

J & O LLC is a New York corporation that operates a bar and lounge in Jackson Heights, New York that can accommodate up to 200 people. Compl. ¶ 2; Aff. of Gemma M. Estrada Mora, ECF No. 20–1 ("Mora Aff."). Though J & O LLC neither communicated with plaintiff regarding a license to telecast the Event nor entered into a contract with plaintiff obtaining the right to do so, Compl. ¶ 13, an auditor observed the telecasting of the Event on two television screens inside J & O LLC's establishment at 11:55 on November 22, 2014. Mora Aff. at 1.

Plaintiff never authorized J & O LLC to "intercept, receive or transmit the communication of the Event or to assist in such actions in any form or at any time." Compl. ¶ 19.

Plaintiff filed a complaint against J & O LLC and individual defendants Batista and Pimentel as "officer[s], director[s], shareholder[s] and/or principals of J & O LLC," *id.* ¶ 5, alleging violations of the Federal Communications Act of 1934,[1] 47 U.S.C. §§ 553 and 605. After the Defendants failed to "appear, answer, or otherwise respond to the Complaint," R. & R. 1, plaintiff filed a request for a certificate of default pursuant to Fed. R. Civ. P. 55(a), *see* Req. for Certificate of Default, ECF. No. 9; *see also* Req. for Certificate of Default, ECF No. 15, which was entered by the clerk. Thereafter, on December 5, 2017, plaintiff moved for a default judgment under Fed. R. Civ. P. 55(b). Mot. for Default J., ECF No. 12. This motion was referred to Judge Tiscione the same day, and the report and recommendation was received on July 25, 2018.

## LEGAL STANDARD

When reviewing a magistrate judge's report and recommendation, I will "adopt those portions of the report to which no objections have been made and which are not facially erroneous." *Pall Corp. v. Entegris, Inc.*, 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (quoting *Walker v. Vaughan*, 216 F. Supp. 2d 290, 291 (S.D.N.Y. 2002)); *see also* Advisory Comm. Notes to Fed. R. Civ. P. 72(b). However, if a party files timely objections, I must "conduct a *de novo* review of

---

[1] Though plaintiff raised claims under §§ 553 and 605, Judge Tiscione analyzed Defendants' liability only under § 605, which provides that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." 47 U.S.C. § 605(a). Even where a claimant establishes liability under both sections, "the law in this Circuit is clear that a plaintiff may recover under only one." *Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosita, Inc.*, 804 F. Supp. 2d 108, 114 (E.D.N.Y. 2011). Finding that § 605 provides for greater recovery than section § 553 and that corporate defendant J & O LLC was liable under § 605, Judge Tiscione did not reach an analysis of defendants' liability under § 553. Plaintiff did not object to this portion of the report and recommendation and, finding no clear error, I adopt Judge Tiscione's approach.

any contested sections of the report." *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 222 F. Supp. 3d 169, 174 (E.D.N.Y. 2016); *see also* 28 U.S.C. § 636(b)(1).

Plaintiff objects to two portions of Judge Tiscione's report: the recommendation that "default judgment is not appropriate as to [the] individual [d]efendants," and the amount of damages assessed against J & O LLC. Pl.'s Objs. 1–2. I will discuss each in turn.

## DISCUSSION

i. **Defendants Batista and Pimentel**

Though Judge Tiscione found that plaintiff "has sufficiently established that J & O LLC intercepted and divulged an unauthorized satellite communication of the Event in violation of Section 605(a)," R. & R. 7, he concluded that plaintiff failed to establish the individual liability of either Batista or Pimentel, R. & R. 8–11.[2] In its complaint, plaintiff alleged that Batista and Pimentel are "officer[s], director[s], shareholder[s] and/or principals" of J & O LLC, that they "had a right and ability to supervise the infringing activities," and that they "had an obvious and direct financial interest in the exploitation of the copyrighted materials." Compl. ¶ 5, 16, 17. To support its claim that Batista and Pimentel had the requisite control over the activities of J & O LLC such that individual liability is appropriate, plaintiff noted that both defendants are listed on J & O LLC's liquor license, which is on file with the New York State Liquor Authority. *Id.* ¶ 16. Despite the fact that the Liquor Authority states that only "officers or directors" of a corporation may hold a liquor license, Judge Tiscione found that the mere fact that Batista and Pimentel are officers or directors of J & O LLC was not sufficient to demonstrate that they had the necessary

---

[2] Judge Tiscione further recommended that a default judgment against Batista be denied even if there were a sufficient basis to impose individual liability. R. & R. 11 n.12. Plaintiff served Batista 122 days after filing the complaint and provided no explanation for the delay in service. *Id.*

4

"right and ability to supervise an unauthorized transmission." R. & R. 9. Without this requisite showing—let alone the accompanying requirement that plaintiff demonstrate that the individual defendants had an "obvious and direct financial interest" in the unauthorized transmission—Judge Tiscione found that plaintiff's claims against Batista and Pimentel must be dismissed. *Id.* at 8–11.

As Judge Tiscione explained, § 605 allows an individual to be held liable for the actions of a corporate defendant in one of two ways: through contributory liability or vicarious liability. R. & R. 8. To establish liability for contributory copyright infringement, a plaintiff must "demonstrate that [the individual defendant] *authorized* the violations set forth in the Complaint." *J & J Sports Prods., Inc. v. Mangos Steakhouse & Bakery, Inc.*, No. 13 CV 5068, 2014 WL 2879868, at *5 (E.D.N.Y. May 7, 2014) (emphasis added) (citing *Garden City Boxing Club, Inc. v. Morales*, No. 05 CV 64, 2005 WL 2476264, at *10 (E.D.N.Y. Oct. 7, 2005)), *opinion adopted*, 2014 WL 2879890 (E.D.N.Y. June 24, 2014). Plaintiff does not allege at any point in its complaint that Batista and Pimentel authorized the infringement, so Judge Tiscione found that contributory liability should not apply, *see* R. & R. 8—a point to which plaintiff does not object.

Rather, plaintiff objects to Judge Tiscione's analysis regarding the applicability of vicarious liability. An individual can be held vicariously liable for copyright infringement if he (1) "had a right and ability to supervise the violations," and (2) "an obvious and direct financial interest in the misconduct." *Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosita, Inc.*, 804 F. Supp. 2d 108, 113 (E.D.N.Y. 2011) (quoting *J & J Sports Prods., Inc. v. 291 Bar & Lounge, LLC*, 648 F. Supp. 2d 469 (E.D.N.Y. 2009)). Finding that plaintiff alleged only "rote legal conclusions" and "formulaic recitation[s] of the elements" of vicarious liability, Judge

Tiscione concluded that vicarious liability did not provide a sufficient basis for holding Batista and Pimentel liable for the actions of J & O LLC. R. & R. 8 (quoting *J & J Sports Prods., Inc. v. LX Food Grocery Inc.*, No. 15-CV-6505 (NGG) (PK), 2016 WL 6905946, at *3 (E.D.N.Y. Nov. 23, 2016)).

Plaintiff does not deny that the cases on which Judge Tiscione relies have refused to impose vicarious liability on similar facts, but it argues that there is a "split of authority" on this issue. Pl.'s Objs. 2. Plaintiff cites to several cases that found individual liability based solely on a recitation of the necessary requirements of the cause of action: (1) that the individual is an "officer, director, shareholder and/or principal" of the corporate defendant, (2) that the individual had a right and ability to supervise the infringement, and (3) that the individual had a financial interest in the action. *Id.* 2–7. However, many of the cases on which plaintiff relies are from outside of the Second Circuit, and therefore not controlling. *See Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261 (E.D. Pa. 2014); *Joe Hand Promotions v. Tickle*, No. 4:12-cv-01874, 2016 WL 939797 (M.D. Pa. Feb. 2, 2016);[3] *see also J & J Sports Prods., Inc. v. Classico Bar Inc.*, No. 2:16-cv-05639 (ADS) (SIL), 2018 WL 1168582, at *2 (E.D.N.Y. Mar. 6, 2018) (dismissing plaintiff's objections to the R. & R. because, in part, "[p]laintiff largely quoted from decisions from outside the Second Circuit").

Moreover, to the extent that there is a legitimate disagreement between courts in the Second Circuit regarding the necessary allegations for a finding of individual liability under § 605, I am more persuaded by the reasoning of the cases cited by Judge Tiscione. Plaintiff asks

---

[3] In addition to being non-controlling, *Joe Hand v. Tickle* also appears to involve materially different facts regarding individual liability than the instant case; in *Tickle*, plaintiff Joe Hand Promotions alleged that the individual defendant "*specifically directed* the employees of Fatty McDaddy's . . . to unlawfully intercept and broadcast" the Program. *Tickle*, 2016 WL 393797, at *13 (emphasis added). The plaintiff here alleges no direct involvement or authorization on the part of Batista or Pimentel, stating only that the individual defendants had the *general* ability to direct activities at J & O LLC.

6

this court to assume that, by virtue of Batista's and Pimentel's status as officers or directors of J & O LLC, they automatically had the "right and ability to supervise an unauthorized transmission." R. & R. 9. But the complaint provides no evidence of Batista's or Pimentel's individual control or involvement in the decision to infringe on plaintiff's copyright: there is no allegation that the individual plaintiffs were even *present* at the establishment on the night of the Event, *cf. J & J Sports Prods., Inc. v. La Ruleta, Inc.*, No. CV 11-4422(NGG)(VVP), 2012 WL 3764062, at *3 (E.D.N.Y. Aug. 7, 2012), let alone that they "authorized or supervised the violation" while it was occurring, *Circuito*, 804 F. Supp. 2d at 113. In contrast, courts that have found individual liability in similar circumstances frequently rely on factual allegations of close and obvious supervision that are not present here. *See, e.g. Tickle*, 2016 WL 393797, at *1, *13 (noting that the individual defendants were alleged to have "specifically directed" their subordinates to commit the copyright infringement); *J & J Sports Prods., Inc. v. Welch*, No. 10-CV-0159 (KAM), 2010 WL 4683744, at *1 (E.D.N.Y. Nov. 10, 2010) (noting that the individual defendant was alleged to have had "supervisory capacity and control" on the particular night in question).

Plaintiff's attempt to hinge its allegation of individual control on the fact that Batista's and Pimentel's names appear on J & O LLC's liquor license "infers too much from that one fact." *J & J Sports Prod., Inc. v. El Ojo Aqua Corp.*, No. 13-CV-6173, 2014 WL 4700014, at *4 (E.D.N.Y. Aug. 29, 2014), *opinion adopted*, 2014 WL 4699704 (E.D.N.Y. Sept. 22, 2014). "In the context of unlicensed broadcasting of pay-per-view events, courts in this jurisdiction have held repeatedly that the mere presence of an individual defendant's name on a liquor license is insufficient to establish" individual liability. *J & J Sports Prods, Inc. v. 88-18 Tropical Restaurant Corp.*, 17-cv-2620, 2018 WL 1701942, at *3 (E.D.N.Y. Mar. 30, 2018). If anything,

7

this fact demonstrates that Batista and Pimentel "had a general ability to supervise the establishment's operations and enjoy its profits," but it reveals no specific information about the role that either individual may have played in the infringement. *El Ojo*, 2014 WL 4700014, at *4. Furthermore, while one must be either an officer or a director to be included on a liquor license, plaintiff's allegations do not make clear which of these positions Batista and Pimentel held. *See J & J Sports Prods., Inc. v. Daley*, No. CV 06-0238(ERK)(JO), 2007 WL 7135707, at *4 (E.D.N.Y. Feb. 15, 2007). The lack of clarity regarding the individuals' specific roles makes it even more difficult to find that either defendant had supervisory authority over this particular action of J & O LLC. *J & J Sports Prods Inc. v. Afrikan Poetry Theatre Inc.*, No. 17-cv-2196-ARR-CLP, 2018 WL 1725692, at *1 (E.D.N.Y. Apr. 10, 2018).

Furthermore, as Judge Tiscione observed, plaintiff fails to provide any evidence that Batista and Pimentel meet the second prong of the vicarious liability test: that they had an "obvious and direct financial interest" in the infringement activities. R. & R. 9. Plaintiff argues that requiring specific evidence of financial gain "misstates the standard" of vicarious liability, Pl.'s Objs. 6, but it presents no authority for this contention. *See Classico*, 2018 WL 1168582, at *2. Typically, courts require a stronger showing of financial gain than that established by plaintiff's conclusory allegations; in cases where vicarious liability has been found, plaintiffs generally allege either direct financial gain, "such as a cover charge on the night of the event," or significant indirect evidence, "such as a bar hosting a large number of patrons, who would presumably purchase drinks during the broadcast." *LX Food Grocery*, 2016 WL 6905946, at *3. Though plaintiff alleges that there were approximately 60 people present at the bar during the night of the Event, there is no evidence that those patrons purchased drinks or paid a cover charge—or that they even went to J & O LLC that night in order to view the telecasting of the

Event. *Cf. J & J Sports Prods., Inc. v. 1400 Forest Ave Restaurant Corp.*, No. 13-CV-04299 (FB)(VMS), 2014 WL 4467774, at *2 (E.D.N.Y. Sept. 9, 2014) (holding that individual defendants had a financial interest in the infringement in part because patrons were "required to pay $8.00 to a doorman as admission or cover charge" to view the infringed Event); *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 306 (2d Cir. 1963) (finding individual defendants liable where the individual "receive[d] a percentage—in some cases 10%, in others 12%"—of the sales from the unauthorized materials). Thus, the mere fact that Batista and Pimentel are officers or directors of J & O LLC "is too attenuated to establish a sufficiently 'direct' financial interest in the exploitation of copyrighted materials." *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997).

In sum, plaintiff's allegations regarding the liability of Batista and Pimentel contain nothing more than conclusory language that parrots the statutory requirements, and "legal conclusion[s] couched as . . . factual allegation[s]" that I am "not bound to accept as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Plaintiff seeks leave to amend its complaint if this court agrees that individual liability against Pimentel and Batista is improper. Pl.'s Objs. 2. However, "[p]laintiff has not identified a single new fact that [it] intends to plead if granted . . . leave to amend." *Huelbig v. Aurora Loan Servs., LLC*, No. 10 Civ. 6215(RJH)(THK), 2011 WL 4348281, at *4 (S.D.N.Y. May 18, 2011), *opinion adopted*, 2011 WL 4348275 (S.D.N.Y. Sept. 16, 2011); *cf. Bivings v. Wakefield*, 316 F. App'x 177, 178, 180–81 (3d Cir. 2009) (granting leave to amend a complaint following a report and recommendation where the plaintiff "specifically identified those claims" he wished to add in the amendments and provided a sufficient basis to support each additional claim). Moreover,

plaintiff had the opportunity to amend its complaint pursuant to Federal Rule of Civil Procedure 15(a)(1) after service was made or to seek leave to do so before Judge Tiscione filed his report and recommendation. Plaintiff did not take any previous opportunity to amend its complaint. Where a plaintiff "had the opportunity to amend [its] Complaint" at an earlier time and "there is no indication that amendment would not be futile," a court has the discretion to "deny leave to amend." *Champions League, Inc. v. Woodard*, 224 F. Supp. 3d 317, 326 (S.D.N.Y. 2016) (alteration in original) (quoting *M.C. v. Arlington Cent. Sch. Dist.*, No. 11-CV-1835, 2012 WL 3020087, at *14 (S.D.N.Y. July 24, 2012)). Here, plaintiff waited until filing its objections to the report and recommendation to express any desire to amend its complaint, and it has "not satisfactorily explained why [it] waited until this late date" to do so. *Suro v. United States*, 107 F. Supp. 2d 206, 209 (E.D.N.Y. 2000). Because plaintiff fails to offer any evidence "as to what would change in the [amended] pleading" to cure the defects in its current individual liability allegations, *Huelbig*, 2011 WL 4348281, at *34, I deny this request.

    **ii.    Damages**

Judge Tiscione recommended the entry of a judgment awarding plaintiff $3,305.00 in damages: $2,800.00 in statutory damages and $505.00 in costs and disbursements. R. & R. 18. Plaintiff objects to the calculation of statutory damages and to Judge Tiscione's recommendation that enhanced damages be denied. Pl.'s Objs. 7.

As Judge Tiscione explains, statutory damages under § 605 are typically determined using the "greater of two calculations: flat fee or per-person." R. & R. 12; *see also LX Food Grocery*, 2016 WL 6905946, at *4. Finding that plaintiff did not provide sufficient evidence of a per-person licensing fee to allow the court to calculate the amount of damages using that

method,[4] Judge Tiscione concluded that damages should be assessed at $2,800—the fee that J & O LLC would have paid if it had obtained a commercial license to broadcast the Event. R. & R. 12. Plaintiff argues that neither method of calculating damages should be utilized by this court,[5] and that the court should instead use its discretion to award an amount that would be more likely to discourage future unlawful conduct. Pl.'s Objs. 8–9 (citing *J & J Sports Prods., Inc. v. Tonita Restaurant, LLC*, No. 5:13-CV-382-REW, 2015 WL 9462975 (E.D. Ky. Dec. 28, 2015); *Joe Hand Promotions, Inc. v. Sheedy*, No. 4:08-cv-1797-TLW-TER, 2011 WL 4089534 (D.S.C. July 29, 2011)).

In *Kingvision Pay-Per View, Ltd. v. El Rey Del Bistec Y Cardidad, Inc.*, one of the few Second Circuit cases on which plaintiff relies, the licensing fee was much lower than the fee at issue here, necessitating a higher damage assessment in order to ensure sufficient deterrent value. No. 01 CIV 6562(SHS), 2001 WL 1586667, at *2 (S.D.N.Y. Dec. 12, 2001) (increasing the damages to $2,000.00 where the licensing fee would have cost the liable establishment $1,000.00). In contrast, the $2,800.00 fee here is sufficiently high, but not so high that "it would likely put a small establishment such as [J & O LLC] out of business." *Id.* I agree with the weight of the authority in this circuit that the higher of the flat-fee or per-person calculations

---

[4] Plaintiff cites to a variety of cases that calculate the per-person fee using a rate of $54.95 for individual persons to obtain the right to view other events in their private residences. R. & R. 12 n.14. But, as Judge Tiscione observes, there is no evidence that $54.95 is the fee that plaintiff would have charged in this particular instance. *Id.* And many of the cases cited by plaintiff as a basis for this figure were decided over a decade ago, and there is no evidence that the rate—even if once valid—remains the going rate to obtain a similar residential license today. *See, e.g. Garden City Boxing Club, Inc. v. Bello*, No. CV-05-1300(ARR)(JMA), 2005 WL 2496062 (E.D.N.Y. Sept. 20, 2005); *see also J & J Sports Prods., Inc. v. Monte Limar Sports Bar Inc.*, No. 15-CV-3771, 2017 WL 933079, at *4 (E.D.N.Y. Mar. 8, 2017) (describing use pf the $54.95 figure as "unsupported, speculative and questionable").

[5] Plaintiff's requested amount in statutory damages, $3,297.00, is the same as the amount that would be assessed using the unsupported per-person figure of $54.95 and multiplying it by the 60 people who were in attendance at J & O LLC during the Event. However, plaintiff states in a footnote that it is not arguing for a statutory damages calculation based on the per-person amount, as that amount would "understate the seriousness of defendants' conduct." Pls. Objs. 7 n.1 (quoting *J & J Sports Prods., Inc. v. Sin Fronteras Restaurant*, No. 09 CV 1873(FB), 2010 WL 1565441, at *8 (E.D.N.Y. Feb. 23, 2010), *opinion adopted*, 2010 WL 1565297 (E.D.N.Y. Apr. 16, 2010)). Plaintiff provides no explanation for the method used to arrive at its preferred amount of $3,297.00, other than to state that it is "less than 3x the licensing fee." Pl.'s Objs. 8.

represents the proper amount of statutory damages and that, in this case, $2,800 is the correct amount. *See, e.g.*, *1400 Forest Ave Restaurant Corp.*, 2014 WL 4467774, at *7 (describing the flat-fee and per-person methods as the "two methods [utilized by courts in the Eastern District of New York] to determine the amount of statutory damages to be awarded") (collecting cases).

Similarly, I am not convinced by plaintiff's argument that enhanced damages should be assessed against J & O LLC. Pl.'s Objs. 9 (requesting enhanced damages of three times the statutory amount). Though J & O LLC's conduct was certainly intentional, the defendant's willfulness alone does not determine the availability of enhanced damages; instead, courts consider a variety of factors when deciding whether to increase damages, including the number of prior violations, the amount of actual damages, the amount of unlawful gains obtained by the defendant, whether the Event was advertised, and whether or not a cover charge was collected during the Event. *See J & J Sports Prods., Inc. v. Big Daddy's Theme Palace, Inc.*, No. 14-CV-2765 (JG)(JMA), 2015 WL 58606, at *5 (E.D.N.Y. Jan. 5, 2015). Plaintiff's complaint fails to allege that any of these factors apply to J & O LLC's actions, or that its actions were "particularly severe" in this case such that the discretionary imposition of enhanced damages is warranted. *LX Food Grocery*, 2016 WL 6905946, at *5. *J & J Sports Productions, Inc. v. Meson de Colombia, Inc.*, the only case cited by plaintiff to support its request for enhanced damages, involved a much lower statutory damage award, requiring an enhanced assessment to ensure deterrence. No. 10CV1142 (ENV)(ALC), 2010 WL 4791771, at *3 (E.D.N.Y. Oct. 7, 2010) (awarding enhanced damages of three times the statutory amount of $1,500). In this case, I agree with Judge Tiscione's conclusion that plaintiff failed to provide sufficient support for its contention that this court should "jettison[] the factor-based analysis" frequently used by courts when considering enhanced damages, or that J & O LLC's conduct demonstrates an infringement

of such severity that enhanced damages are warranted. R. & R. 15.

## CONCLUSION

For the reasons discussed above, I adopt Judge Tiscione's report and recommendation in its entirety. Plaintiff's motion for default judgment is therefore granted as to defendant J & O LLC, and it is awarded $3,305.00 in damages and costs. Plaintiff's motion for a default judgment is denied as to Johanna Batista and Oniel Pimentel—the default against each individual defendant is vacated and the case against them is dismissed. Finally, as to the remainder of the report and recommendation—to which there was no objection—I conclude there is no clear error on the face of the record. I therefore adopt the unobjected-to portions in their entirety—specifically, the recommendations regarding the lack of evidence for damages based on lost goodwill, reputation, and future revenue, the denial of a prejudgment interest award, and the calculation of the total available costs and disbursements.

So ordered.

Dated: August 21, 2018 _____/s/_____
      Brooklyn, NY                                     Allyne R. Ross
                                                         United States District Judge